Defendant-Appellant Kevin F. Kirk appeals his conviction on one count of engaging in a pattern of corrupt activity in violation of R.C. § 2923.23(A)(1). Through counsel, he advances two assignments of error. In both, he contends that the jury's verdict was against the manifest weight of the evidence, first because the State's evidence failed to establish that he was associated with the drug trafficking enterprise upon which his conviction is founded, and second, because the State failed to prove Kirk committed two predicate acts in furtherance of the enterprise as required by the statute. In addition, Kirk has filed a supplemental brief pro se in which he argues that the trial court abused its discretion in imposing a sentence that exceeds those imposed upon his co-defendants.
Kirk's conviction stems from his involvement in a drug trafficking enterprise operated in Miami County, Ohio, by Carl Faehl. Investigation of Faehl's enterprise began after a joint investigation of other individuals by the Miami County Sheriff's Office and the federal Drug Enforcement Agency uncovered information implicating Faehl in drug trafficking. Deputy Sheriff Paul Reece of the Miami County Sheriff's Office was the lead investigator in the case. By interviewing several of the individuals involved in the enterprise who had agreed to become cooperating sources, Reece was able to ascertain the extent of Faehl's drug dealings.
From December 1995 to October 20, 1997 (hereinafter "the indictment period"), Faehl obtained hundreds of pounds of marijuana from Michael and Ruby Courtright, who procured it from Danny Ganger, a resident of the state of Texas. Typically, the Courtrights would meet Ganger in Tennessee where the exchange of money and marijuana would take place, and the Courtrights would bring the marijuana back to their residence in Troy, Ohio, where it would be stored until Faehl distributed it to others in the enterprise. After the Courtrights moved to Englewood, Ohio, in 1996, they continued to supply Faehl with marijuana in the same manner. A relative of the Courtrights moved into the house in Troy, however, and drug sales between them and Faehl continued to be conducted there as well. On two occasions, the Courtrights flew to Texas where they procured the marijuana then rented a car with which to transport it back to Ohio. As the organization became established, the Courtrights were permitted to take the marijuana more or less on credit and mail payment for it to Ganger in Texas after the marijuana had been sold in Ohio.
Each time the Courtrights met with Ganger, they purchased twenty to forty pounds of marijuana. Upon their return to Troy or Englewood, the Courtrights stored the marijuana in their garage. Faehl took five to ten pounds of marijuana at a time from the Courtrights, eventually distributing approximately ninety percent of the total shipment and permitting the Courtrights to sell the remaining marijuana to friends. On occasion, Courtright would deliver the marijuana to Faehl at Faehl's house in Piqua. After receiving the marijuana from the Courtrights, whether it be at the Courtrights' house or his own, Faehl took it to Tim Jolliff's residence in Miami County, where he would weigh the marijuana and repackage it in smaller bags for distribution and sale.
At trial, Mike Courtright testified that Kirk occasionally accompanied Faehl to the Courtrights' house in Troy to take delivery of the marijuana brought in from Tennessee or Texas. One of those times, Kirk took two to three pounds of marijuana on credit to distribute to others, but was apparently "ripped off" by them, and consequently never paid the Courtrights. Kirk also purchased marijuana from the Courtrights when he visited their home without Faehl. During an interview with Detective Reece following his arrest, Carl Faehl himself confirmed that Kirk was one of the people to whom he distributed marijuana in pound quantities, although he later recanted.
In addition to marijuana, Faehl's enterprise also trafficked in cocaine, which was purchased from sources as close as Dayton and as far away as Florida. Generally, the transactions occurring in Ohio consisted of a participant in the enterprise driving to Dayton, buying from one-quarter to one ounce of cocaine, and bringing it back to Faehl. John Lampe and Melissa Olds, two such couriers, would receive either a gram of cocaine or one hundred dollars for their trouble. As he did with the marijuana, Faehl used the weighing equipment at Tim Jolliff's house in Miami County to weigh the cocaine and repackage it in smaller quantities. Faehl provided some of his friends with free cocaine, and sold the rest to numerous individuals.
At trial, the State contended Kirk was a supplier of cocaine for Faehl's operation. In the summer of 1996 Kirk was temporarily residing at Melissa Olds' home in Piqua, Ohio. Olds testified that during that time, one package containing cocaine was received in the mail at her house. She stated the package was from Florida and that she had turned it over to Kirk who then sold the cocaine to Faehl for $1,400. Witness Kim Trissell testified that numerous such packages were received by Olds and Kirk that summer, but that the packages were from Virginia. Trissell said Olds and Kirk weighed the cocaine into smaller quantities for sale and Kirk sold most of the cocaine the pair received through the mail. Both Kirk and Olds were also using cocaine at the time. Olds recalled that Kirk told her he had traveled to Florida in January of 1997 for the purpose of procuring cocaine.
Olds and Kirk also dealt drugs back and forth between themselves when they shared Olds' home. Olds testified that she purchased small amounts of cocaine from Kirk for her personal use on several occasions, and that she sold Kirk half an ounce of cocaine once. The latter transaction took place at co-defendant Roberta Zorn's house in Piqua. Olds delivered the cocaine to Kirk there, and Kirk went across the street to Faehl's house to get $300 to pay for half of the cocaine. He later paid Olds another $300 which completed the transaction. Olds described this arrangement as "fronting" half of the drug to Kirk, which is a practice that allows a drug dealer to obtain contraband and pay for it after he or she has sold it to others.
On November 25, 1997, a joint indictment was issued in the Common Pleas Court of Miami County, Ohio, for twelve of the individuals involved in Faehl's drug enterprise, including Kirk. All were charged with violating R.C. § 2923.32(A)(1) by engaging in a pattern of corrupt activity. Others involved in the drug trafficking ring were prosecuted in federal court. Following a jury trial, Kirk was sentenced to seven years of imprisonment. He now brings this timely appeal advancing three assignments of error, two in his original brief, and one in his supplemental brief. Since Kirk's first two assignments of error both contend the jury's verdict was against the manifest weight of the evidence, they can conveniently be considered together.
I.
 The verdict was against the manifest weight of the evidence in that the State failed to establish that Appellant was associated with the criminal enterprise headed by Carl Faehl.
 II.
 The verdict was against the manifest weight of the evidence in that the State failed to establish that Appellant committed at least two predicate acts in furtherance of the criminal enterprise headed by Carl Faehl.
In his first and second assignments of error, Kirk contends his conviction was against the manifest weight of the evidence because the State's evidence fails to prove he was associated with Faehl's organization and that he committed two predicate acts related to the enterprise. His argument, however, is couched predominately in sufficiency of the evidence terminology, and as such, we will address both the sufficiency and the manifest weight of the evidence.
The two are not synonymous legal concepts. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. Sufficiency is a question of law which tests the adequacy of the evidence to sustain a verdict. Id. In considering a sufficiency of the evidence claim, a reviewing court
 [E]xamine[s] the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. On the other hand, in weight of the evidence challenges, an appellate court
 [R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins, supra at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. While Thompkins explicitly permits this court to consider credibility when confronted with an argument that the verdict is against the manifest weight of the evidence, such consideration is not unbounded. We explained the limited role of an appellate court in reviewing issues of credibility in weight of the evidence challenges as follows:
 Because the factfinder, be it the jury or * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion. Therefore, although this distinction is not set forth in Thompkins, supra, we conclude that a decision by a factfinder as to which testimony to credit, and to what extent, is a decision that is entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence — in short, how persuasive it is.
State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. We remain mindful of these principles as we turn to the merits of Kirk's first two assigned errors.
The statutory provisions relevant to the offense for which Kirk was convicted are as follows:
R.C. § 2923.32(A)(1)
 No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *.
R.C. § 2923.31(C)
 "Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.
R.C. § 2923.31(E)
 "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.
R.C. § 2923.31(I)
 "Corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:
* * *
(2) Conduct constituting any of the following:
* * *
 (c) Any violation of section * * * 2925.03, * * * [or] 2925.05 * * * of the Revised Code, * * * when the * * * value of the contraband or other property illegally possessed, sold, or purchased in the violation [or combination of violations] exceeds five hundred dollars.
In arguing there was insufficient evidence to establish that he was associated with Faehl's organization, Kirk points out that none of the evidence produced at trial suggested he assisted Ganger and/or the Courtrights in transporting marijuana from Texas to Ohio. Kirk also argues that even if Mike Courtright's testimony that Kirk came to the Courtrights' alone and purchased marijuana is true, there is nothing to connect that transaction with Faehl's enterprise. Kirk further contends neither Mike Courtright, Olds, nor another witness, Michael Parke, testified to any marijuana or cocaine transaction between Faehl and Kirk. Finally, he claims that the absence of a audio or video taped controlled buy and/or seized contraband renders the jury's verdict insufficiently supported.
We find in the record, however, ample evidence to support the jury's verdict that Kirk was associated with Faehl's drug business. While Kirk's statement regarding his lack of involvement in transporting the drugs from Texas to Ohio is true as far as it goes, the structure of the enterprise did not reach its terminus at the point where the bulk marijuana was delivered to Faehl. Others down the line of distribution were also engaged in the business of the enterprise by storing the marijuana, weighing it or providing the means to do so, or by buying and selling it. Through Mike Courtright's testimony, it was established that it was not uncommon for Kirk to accompany Faehl to the Courtrights' to take delivery of the marijuana. On one such occasion, Kirk himself took two to three pounds of marijuana for the purpose of selling it. Kirk also procured cocaine for the enterprise to distribute, as is evidenced by Olds' testimony that Kirk sold $1,400 worth of cocaine to Faehl after receiving it in the mail. Furthermore, Kirk purchased cocaine from Olds at Zorn's house only after obtaining the funds to do so from Faehl.
Kirk's arguments that his purchase of marijuana from Mike Courtright when he went to the Courtrights' alone was unconnected to Faehl's enterprise, and that Courtright, Olds, and Parke never testified to having witnessed a drug transaction between him and Faehl appear to mistakenly presume that in order to be considered to have associated with Faehl's organization, the transactions he engaged in must have taken place between himself and Faehl. In an enterprise, however, it is not necessary for every participant to have dealings with every other participant, or even with the acknowledged head of the enterprise. See State v. Warren (Dec. 31, 1992), Franklin App. No. 92AP-603, unreported. Furthermore, Kirk's purchases of cocaine and its subsequent sale, at least in part, to Faehl also evidence his participation in Faehl's drug operation.
Nor are we convinced that the failure of the investigators to conduct a controlled buy renders the jury's verdict infirm. Detective Reece explained that some of the most likely candidates for wearing a recording device during a controlled buy were too fragile emotionally to be entrusted with such a responsibility. Others were willing to cooperate only so far as confirming information Reece already had and were reluctant to participate in the actual collection of information. Placing any of those individuals in a controlled buy situation would have been a risk to the individual and to the case that Reece was unwilling to take. The fact that no controlled purchases of cocaine or marijuana were conducted in the face of Olds', Trissell's, and Courtright's testimony concerning Kirk's involvement in the drug trafficking enterprise does not persuade us that no rational trier of fact could have found the essential elements of engaging in a pattern of corrupt activity beyond a reasonable doubt.
The evidence produced at trial, viewed in a light most favorable to the State, sufficiently establishes that Kirk was associated with the drug trafficking ring, and that he engaged in two predicate acts related to the enterprise, namely purchasing or selling marijuana and cocaine, that were neither isolated nor so close in time or place that they constituted a single event. See R.C. § 2923.31(E), supra.
Kirk also articulates arguments claiming the jury's verdict was against the manifest weight of the evidence. He challenges Olds' testimony by contending it was unreliable because of her admitted drug use during the indictment period, and by claiming Kim Trissell's testimony refuted most, if not all, of Olds' testimony. Following direct examination, however, Olds was subjected to vigorous cross-examination by not one but two defense attorneys, one representing Kirk and co-defendant Karen Kersey, and one representing co-defendant Roberta Zorn. In addition, while we acknowledge certain discrepancies between Olds' and Trissell's testimony, Trissell's statements can hardly be considered exculpatory as to Kirk's involvement in the drug ring. Olds testified that one package of cocaine was delivered to her home while Kirk lived there; Trissell testified that numerous such packages were received. Olds stated she turned the package over to Kirk and had nothing more to do with it; Trissell testified that Kirk and Olds both weighed the cocaine and that Kirk sold most of it himself. Olds said the package came from Florida and Trissell claimed it was from Virginia, but Trissell also admitted she never actually saw the return address on any of the packages of cocaine. After presentation of all the evidence, the jury was free to attach only so much weight to each witness' testimony as it believed prudent and, as we held in Lawson, supra, a factfinder's decision whether, and to what extent, to credit a witness' testimony is entitled to substantial deference. Furthermore, it is entirely possible, and wholly acceptable, for a jury to determine that parts of a witness' testimony are credible, while other parts are not. On the record before us, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice by finding Kirk guilty of engaging in a pattern of corrupt activity. Accordingly, we conclude that Kirk's conviction was not against the manifest weight of the evidence.
Kirk's first and second assignments of error are overruled.
III.
 The trial court abused its discretion when sentencing appellant to a prison term of seven (7) years when it was inconsistant [sic] to the term of the co-defendants, and the court recklessly inserted findings that were strikingly inconsistant [sic] with the sentencing provisions.
In his third assignment of error, submitted pro se in a supplemental brief and to which the State has not responded, Kirk argues that his sentence was unduly harsh compared to those received by his co-defendants and other members of the Faehl enterprise who were prosecuted separately. He claims the only reason his sentence was for seven years, which he acknowledges is within the statutory guidelines, was because he chose to proceed to trial. He also contends the trial judge failed to consider the statutory factors contained in R.C. §2929.13, and erroneously considered other factors, in imposing Kirk's sentence. For the reasons that follow, we overrule Kirk's third assignment of error.
It is well settled that "[a] trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion." State v. Yontz (1986), 33 Ohio App.3d 342, syllabus; see also R.C. § 2929.12(A). The term "abuse of discretion" implies more than an error of law or judgment, it connotes an attitude on the part of the trial court that is arbitrary, unreasonable, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Kirk was convicted of one count of engaging in a pattern of corrupt activity, a felony of the second degree, for which he could have received a prison term of two, three, four, five, six, seven, or eight years. The trial judge sentenced Kirk to seven years imprisonment.
In support of his argument that he was sentenced more severely than other members of Faehl's drug ring because he chose to proceed to trial, Kirk submits a copy of an April 3, 1998, Piqua Daily Call article, and a copy of the entry imposing his sentence which was journalized April 2, 1998. The article names several participants in the enterprise, including Kirk and his co-defendants, and reports each person's respective sentence, ranging from two years to seven years of imprisonment. Others were, at the time of the writing, awaiting trial or sentencing.
Aside from the fact that the newspaper article reveals Kirk was not the only member of the enterprise to be sentenced to a term of seven years in prison, there is nothing in the article or the record before us to indicate that the sentences were in any way based upon a defendant's decision to proceed to trial. Some participants in the enterprise who chose to proceed to trial received five years imprisonment; others, like Kirk, received a sentence of seven years imprisonment. Several of those involved in the drug ring were sentenced to terms of two or three years, as well, but Kirk has failed to submit evidence of the circumstances under which those individuals were sentenced. Instead, he makes unsubstantiated allegations that he was somehow prejudiced by asserting his constitutional right to trial. The record is devoid of any factual foundation to support Kirk's contentions.
As for the trial judge's alleged failure to consider the statutory factors when imposing sentence on Kirk, the record reveals the contrary is true. In his entry imposing sentence, the trial judge stated the following:
 The Court has considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under R.C. § 2929.11, and has balanced the seriousness and recidivism factors under R.C. § 2929.12 as follows:
As To Recidivism Likely:
 1. Prior adjudication of delinquency or history of criminal convictions.
 2. Not rehabilitated to a satisfactory degree after being adjudicated delinquent or failure to respond favorably in the past to sanctions imposed for criminal convictions.
3. Shows no remorse for the offense.
 4. Demonstrated a pattern of drug or alcohol abuse related to the offense and refuses to acknowledge the pattern or refuses treatment.
As to Seriousness Factors:
 1. Offense committed for hire or as part of organized criminal activity.
Kirk disputes the trial judge's findings, claims the "trial court erroniously [sic] inserted these factors in [an] attempt to justify the sentence it imposed," and contends the court ignored the statutory factors contained in R.C. § 2929.13 which the court is required to consider when imposing sentence. As it pertains to those convicted of a second degree felony, R.C. §2929.13(D) permits a sentencing judge to impose community control sanctions instead of a prison term if the judge finds both of the following:
 (1) A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.
 (2) A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense.
In considering the factors under R.C. § 2929.12, the trial judge found only factors that indicated a greater likelihood of recidivism and that Kirk's conduct was more serious than that normally constituting the offense. Those factors could not, therefore, be outweighed by others to the contrary, since none were found by the court to be applicable. Thus, even assumingarguendo that the trial judge erred by not considering R.C. §2929.13(D), Kirk has suffered no prejudice as a result since he would not have been eligible for community control sanctions anyway.
Kirk also argues that the factors mentioned by the trial judge in the entry imposing sentence were improperly considered. Those factors, however, are specifically required by law to be considered by a sentencing judge pursuant to R.C. § 2929.12. The record reflects the trial judge carefully fulfilled his obligation to do so and we find no abuse of discretion by the trial court in sentencing Kirk to a term of imprisonment of seven years. Kirk's third assignment of error is overruled.
Having found each of Kirk's assigned errors to be without merit, we affirm the jury's verdict and the trial judge's sentence. His motion for stay of execution of sentence is thereby rendered moot.
BROGAN, J. and WOLFF, J., concur.
Copies mailed to:
James D. Bennett Steven R. Layman Hon. Jeffrey M. Welbaum